IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TALTWELL, LLC,

     Plaintiff,

v.                           Civil Action No. 3:07cv543

ZONET USA CORP.,

     Defendant.

### MEMORANDUM OPINION

Plaintiff, Taltwell, Inc. ("Taltwell"), alleges that the defendant, Zonet USA Corp. ("Zonet"), has infringed U.S. Patent No. Re. 37,660 (the "'660 patent"), owned by Taltwell. The Complaint identifies a single Count: Infringement of the '660 Patent. (Compl. ¶¶ 10-16, Docket No. 1.)

In response to the Complaint, Zonet has filed three motions and a counterclaim. Zonet's motions are consolidated into one document: Motion for Lack of Personal Jurisdiction, Motion to Dismiss Claim for Failure to State a Claim upon Which Relief Can Be Granted, or in the Alternative to Transfer Venue. ("Mot. to Dismiss," Docket No. 13.) The first motion asks the Court to dismiss the action for lack of personal jurisdiction over Zonet under Fed. R. Civ. Pro. 12(b)(2). (Id.) The second motion requests dismissal under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim. (Id.) If the motion to dismiss for lack of personal jurisdiction is not granted, Zonet asks in the third motion that the action be transferred to the United States District Court for the Central District of California pursuant to Fed. R. Civ. Pro. 12(b)(3) and 28 U.S.C. §§ 1400(b), 1404(a). (Id.)

Taltwell filed a motion requesting an order for expedited discovery. (Taltwell's Mot. for Expedited Jurisdictional Disc., Docket No. 17) ("Pl.'s Mot. Disc.") Taltwell asks that it be allowed to conduct limited discovery in advance of the scheduling conference on matters pertaining to Zonet's motions to dismiss for lack of personal jurisdiction. Through this motion, Taltwell hopes to uncover additional contacts between Zonet and the forum upon which to base this Court's jurisdiction.

In its Counterclaim, Zonet seeks to have the '660 patent declared invalid, in whole or in part, for its alleged failure to comply with 35 U.S.C. §§ 102-03, 112. (Countercl. 2-3, Docket No. 10.)

For the reasons stated below, Zonet's motions to dismiss the action for lack of personal jurisdiction, to dismiss for failure to state a claim, and to transfer venue to the Central District of California are denied on their merits. Taltwell's motion for expedited jurisdictional discovery is denied as moot.

## BACKGROUND

David Talton was reissued the '660 patent on April 16, 2002. (Compl. ¶ 7.) Talton assigned his interest in the '660 patent to Taltwell, a Vienna, Virginia-based limited liability company that is wholly owned by him. (Id. ¶¶ 3, 7; Pl.'s Financial Discl. Statement, Docket No. 2).

The subject of the '660 patent, called an "Automatic Dialing System," is a credit card-sized electronic device that stores an

2

individual's credit card information and frequently dialed telephone numbers. Automatic Dialing System, U.S. Patent No. Re. 37,660, at [57] (reissued Apr. 16, 2002), Docket No. 1, Exhibit A. The device is intended to facilitate credit card calls from pay phones. (See id. Col.1-3.) The user holds the device up to the receiver of a telephone and a small speaker on the device "speaks" the desired phone numbers and credit card number into the phone. (Id.) It does not appear that Taltwell has manufactured any of the devices.

Zonet is a California corporation that produces network and connectivity devices, such as ethernet cards, notebook adapters, and modems. (Compl. ¶¶ 4, 8.) Taltwell contends that "Zonet's PCMCIA[1] Hardware Modem and/or PCMCIA Wireless Network Adapter include all elements of one or more claims of the '660 patent." (Id. ¶ 9.) The products identified in the Complaint, "PCMCIA Hardware Modem" and "PCMCIA Wireless Network Adapter," are not so-named on Zonet's website and the Complaint does not reference product numbers. Assuming that the labels are descriptions of products, rather than specific product names, it appears that Taltwell is referring to the "56K/V.92 Data Fax PCMCIA Modem" (product no. ZFM5600CF) and the discontinued "Wireless 11b 32Bit

---

[1]   PCMCIA stands for Personal Computer Memory Card International Association.   It is a trade organization that promulgates standards for certain computer components that ensures that products made by different manufacturers are compatible. See About PCMCIA, http://www.pcmcia.org/about.htm.

PCMCIA Card" (product no ZEW1000WU), which are a PCMCIA-based hardware modem and wireless network adapter respectively.[2]

According to Taltwell, Zonet sells its products over the Internet through various online retailers, some of which are allegedly located within the Eastern District of Virginia. (Id. ¶ 8.)  Taltwell also alleges that Zonet sells its products directly through its website, which is interactive and accessible by persons in Virginia.[3] (Id. ¶ 9.)  Taltwell further maintains that Zonet's products can be purchased from "a retailer of Zonet within this judicial district." (Id.) It is unclear whether this assertion pertains to an online or a "bricks and mortar" retailer.

Although Zonet's Answer (Docket No. 9) initially denied Taltwell's allegations that some of Zonet's retailers were in Virginia (see Answer ¶¶ 8-9), however, Zonet later admitted in a brief that three of its 629 "resellers, distributors, or retailers" are located in Virginia. (Mem. of Law in Supp. Of Mot. to Dismiss for Lack of Personal Jurisdiction, Mot. to Dismiss for Failure to State a Claim, or in the Alternative to Transfer Venue. 1) ("Def.'s

---

[2] A PCMCIA hardware modem is a small component that can be inserted into a slot in a laptop computer to allow the user to connect to the internet through telephone wires. A PCMCIA wireless network adapter is similar to the hardware modem, except that it allows the user to connect to the internet wirelessly.

[3] Zonet denies that consumers can purchase its products directly from its website. (Answer ¶ 8, Docket No. 9.) A perusal of its website, www.zonetusa.com, appears to confirm Zonet's denial. Interested purchasers are directed to the websites of Zonet's retailers.

4

Mem.") Zonet further admitted that it "has sold less than 20 of the allegedly infringing units within Virginia in the past seven (7) years," amounting to less than $500 in sales. (<u>Id.</u> at 1-2.)

Taltwell claims that the above-mentioned products infringe on claims of the '660patent either directly or through the doctrine of equivalents. (Compl. ¶ 12.)  Accordingly, Taltwell is seeking injunctive relief and damages. (<u>Id.</u> ¶ 1.)

**DISCUSSION**

## I.  Zonet's Motion To Dismiss For Lack Of Personal Jurisdiction

In patent infringement cases, the law of the Federal Circuit governs all procedural matters unique to patent law.  <u>See</u> <u>Beverly Hills Fan Co. V. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1564 (Fed. Cir. 1995); <u>Reynolds & Reynolds Holdings, Inc. V. Data Supplies, Inc.</u>, 301 F.Supp.2d 545, 549 (E.D. Va. 2005).  Whether the Court may exercise personal jurisdiction over a defendant is arguably a procedural matter that is not unique to patent law; however, the Federal Circuit has held that jurisdictional issues respecting an out-of-state accused infringer are "intimately involved with the substance of the patent laws" and therefore subject to Federal Circuit precedents.  <u>Akro Corp. v. Luker</u>, 45 F.3d 1541, 1543 (Fed. Cir. 1995).[4]

---

[4] The Supreme Court has not decided this issue so the decision in <u>Akro</u> controls the choice of law issue.

When personal jurisdiction over the defendant is challenged before discovery, a plaintiff need only make a prima facie showing of the court's jurisdiction. Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194, 1201 (Fed. Cir. 2003). The court may rely on the pleadings and affidavits of both parties, but all factual inconsistencies are to be "construed . . . in the light most favorable to the plaintiff." Id.; see also Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002) ("[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prime facie showing . . . and . . . [i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor.").

Whether personal jurisdiction exists is determined by a two-party inquiry: (1) whether the forum state's long-arm statute permit the exercise of jurisdiction, and (2) whether the assertion of jurisdiction comports with the Fifth Amendment's Due Process Clause. Graphic Control Corp. v. Utah Med. Prod., 149 F.3d 1382, 1385 (Fed. Cir. 1998); see also Akro, 45 F.3d at 1544-45 (noting that Fifth Amendment due process controls patent infringement cases, but that Fourteenth Amendment due process precedents are applicable).

Virginia's long-arm statute provides, in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
> 1. Transacting any business in this Commonwealth;
> . . . .
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business . . . or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth; . . . .

Va. Code Ann. § 8.01-328.1(A).

The Supreme Court of Virginia has interpreted the state's long-arm statute to assert jurisdiction "to the extent permissible under the due process clause." John G. Kolbe, Inc. v. Chromodern Chair Co., 180 S.E.2d 664, 667 (Va. 1971). Because the Virginia long-arm statute's reach is coextensive with due process, some courts have concluded that "the court must undertake only the constitutional due process analysis" to adjudicate a challenge to personal jurisdiction in a patent law action. Reynolds & Reynolds, 301 F.Supp.2d at 550; see also Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127 n.2 (4th Cir. 1986) ("[T]he state law and due process analyses are identical."). There is, however, Federal Circuit precedent to the contrary: "[T]he Virginia legislature also intended the particulars of the long-arm statute to be satisfied even though it could be argued that a lesser standard would meet

7

due process. Thus, . . . it [is] more prudent to undertake a separate analysis." <u>Beverly Hills Fan</u>, 21 F.3d at 1569 n.23; <u>cf. Aitken v. Commc'n Workers of Am.</u>, 496 F.Supp.2d 653, 658-61 (E.D. Va. 2007) (undertaking separate jurisdictional analyses under Virginia statute and Due Process Clause). <u>But</u> <u>see</u> <u>Deprenyl Animal Health</u>, 297 F.3d at 1350. For the sake of erring on the side of caution, jurisdiction will be analyzed separately under Virginia's long-arm statute and the Fifth Amendment Due Process Clause.

### A. Personal Jurisdiction Under Virginia's Long-Arm Statute

Taltwell, which bears the burden of proving jurisdiction, argues that the court has personal jurisdiction over Zonet under Virginia's long-arm statute by operation of subsections (A)(1), (A)(3), and (A)(4) of Va. Code Ann. § 8.01-328.1. For the reasons outlined below, Taltwell has made a prima facie showing of the Court's jurisdiction under subsections (A)(1) and (A)(3). However, it is doubtful that jurisdiction can be established under § 8.01-328.1(A)(4).[5]

### 1. § 8.01-328.1(A)(1)

Subsection (A)(1) provides that jurisdiction is proper if the events giving rise to the cause of action were the result of the defendant's "[t]ransacting any business in this Commonwealth." §

---

[5] Further jurisdictional discovery would be useful in evaluating the latter subsection. Nonetheless, Taltwell need only fulfill one of the long-arm statute's provisions in order for the Court to proceed to the due process analysis.

8.01-328.1(A)(1).    Referring to subsection (A)(1), the Supreme
Court of Virginia has characterized the long-arm statute as a
"single-act statute requiring only one transaction in Virginia to
confer jurisdiction on our courts." Peninsula Cruise, Inc. v. River
Yacht Sales, Inc., 512 S.E.2d 560, 562 (Va. 1999).    Thus, where a
sale occurs outside of the state, but the item is delivered by the
seller to a buyer in Virginia, the long-arm statute's purpose is
satisfied if the claim arises from the sale. Id. at 563 (holding
that the sale and delivery of one boat into Virginia by a foreign
seller satisfied § 8.01-328.1(A)(1)).

     In its Complaint, Taltwell alleges that the purportedly
infringing products "are being offered for sale and/or have been
sold on at least Zonet's website, which is accessible and user
interactive within this judicial district, and/or a retailer of
Zonet within this judicial district." (Compl. ¶ 9.)    This
allegation was initially denied by Zonet. (Answer ¶¶ 8-9.) Assuming
the allegations are true, as the Court must do, Taltwell has
satisfied § (A)(1) of Virginia's long-arm statute by asserting that
an allegedly infringing product has been sold into Virginia - the
relevant transaction being a sale by Zonet to a retailer in
Virginia.    This conclusion is bolstered by a subsequent affidavit
filed by Zonet, which the Court may consider in the context of a
motion to dismiss for lack of personal jurisdiction. The statement
of Zonet's General Manager, Jenny Yang, admits that three of

9

Zonet's resellers, distributors, or retailers are located in Virginia and that $500 worth of the allegedly infringing goods have been delivered into the forum state. (Yang aff. ¶¶ 3, 5, Docket No. 7, Ex. 1.) Thus, Virginia's "single-act" long-arm statute is satisfied because some of the products giving rise to the claim in this action has been sold into Virginia.

### 2.    § 8.01-328.1(A)(3)

Section 8.01-328.1(A)(3) provides that personal jurisdiction may be exercised where a tortious injury is caused by an act within Virginia. It is undisputed that Zonet is California corporation with its principal place of business in California (Compl. ¶ 4). An identifiable act within Virginia, if one has occurred, must be found in the relationship of Zonet and a retailer or distributor located in Virginia.    The record discloses the existence of an injury causing act within Virginia.

When a seller of allegedly infringing goods sells and delivers such goods to a buyer in another state, the situs of an act constituting the tort is the state where the buyer is located. <u>See</u> <u>North Am. Philips Corp. v. Am. Vending Sales</u>, 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("We hold that to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there)."). In the present action, Taltwell has alleged that Zonet used retailers or distributors in Virginia. (Compl. ¶ 8.) That allegation necessarily means that Zonet has sold the products

10

to the retailers or distributors located in Virginia. Furthermore, Zonet admits that it has three Virginia-based retailers or distributors and that roughly twenty of the allegedly infringing products have been sold into Virginia. (Yang aff. ¶¶ 3, 5.) Thus, personal jurisdiction may be exercised under § 8.01-328.1(A)(3).

### 3.    § 8.01-328.1(A)(4)

Subsection (A)(4) permits the court to exercise personal jurisdiction if the defendant "[c]aus[es] tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business . . . or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(4). Under the stream of commerce theory, which is endorsed by the Federal Circuit, selling a product to a retailer or distributor with knowledge that the product will ultimately be sold in the forum state is an act outside of the forum state. Beverly Hills Fan, 21 F.3d at 1566 (construing Va. Code Ann. § 8.01-328.1(A)(4)). When an allegedly infringing product is placed into the stream of commerce, the situs of the injury is the place where the infringing item is ultimately sold. Id. at 1571 ("Economic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there.").

Additionally, to assert jurisdiction under § 8.01-328.1(A)(4), the plaintiff must demonstrate that the defendant "regularly

11

solicits business . . . or derives substantial revenue" from the sale of goods in Virginia.  When the quantity of goods sold into the forum state is a small percentage of the defendant company's nationwide sales, "the 'substantial revenue' test may be satisfied . . . if [the revenue derived from the forum state] exceed's the state's per capita share of substantial nationally derived revenue." Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd., 647 F.2d 200, 206 (D.C. Cir. 1981) (construing language in D.C.'s long-arm statute that is identical to Virginia's).  This approach was endorsed by the Federal Circuit as applied to Virginia's long-arm statute. Beverly Hills Fan, 21 F.3d at 1567 n.17 (adopting Stabilisierungsfonds's reasoning in finding jurisdiction under § 8.01-328.1(A)(4)).

Under a stream of commerce theory, Taltwell would have to present a prima facie case that Zonet delivered its goods to a non-Virginia retailer, such as Amazon.com or Tigerdirect.com, knowing that some of the goods would be sold into Virginia.  Taltwell has requested additional jurisdictional discovery for this purpose. (Pl.'s Mot. Disc., Docket No. 17; see also Taltwell's Reply in Supp. of Mot. for Extension of Time and Mot. Expedited Jurisdictional Disc., Docket No. 29.)  Taltwell does not clearly state in its Complaint that the retailers have sold the allegedly infringing products into Virginia.  On this matter, the Complaint says: "Zonet products are sold over the Internet and through

various online retailers, including Amazon.com, Newegg.com, Buy.com, and Tigerdirect.com, including upon information and belief, retailers in this judicial jurisdiction." (Compl. ¶ 8.)

It is certainly possible that, if Taltwell conducts additional discovery directed at Zonet's non-Virginia retailers, additional sale to Virginia will be revealed. However, there is no way to know what results will be obtained, and Taltwell alleges only that Zonet's non-Virginia retailers sell the allegedly infringing products in the United States; Taltwell does not allege that the non-Virginia retailers sell the products into Virginia.[6]

Taltwell does not allege that Zonet derives "substantial revenue," § 8.01-328.1(A)(4), from goods sold in Virginia. However, Zonet admits to selling less than $500 worth of goods into Virginia in sales to Virginia-based retailers. The first issue, of course, is whether $500 is "substantial revenue," or at least a prima facie showing thereof. Under Federal Circuit precedent, the fact that Zonet's Virginia sales are less than 1% of its annual revenue, (Yang aff. ¶ 3), is irrelevant.[7] See Beverly Hills Fan, 21 F.3d at 1567 n.17. The relevant question is whether Zonet's

---

[6] As a practical matter, it is highly likely that Zonet's non-Virginia retailers sell Zonet's products into Virginia. Websites such as Amazon.com and Tigerdiret.com are very popular and nationally known.

[7] Additional jurisdictional discovery may reveal that much more than 1% of Zonet's revenue is derived from sales to Virginia.

sales to Virginia customers are higher than its per capita nationwide average. The Complaint does not make that allegation.

Accordingly, on the current record, § 8.01-328.1(A)(4) does not provide a basis for personal jurisdiction under Virginia's long-arm statute. That issue may be explored in the course of discovery, and Taltwell may raise the issue in a request for decision on the aspect of jurisdiction after the conclusion of discovery. The issue can be briefed and considered then.

**B.    Personal Jurisdiction Under The Due Process Clause**

Having found that there is jurisdiction under Virginia's long-arm statute, it is now necessary to determine whether the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment. A defendant may be subject to the personal jurisdiction if the defendant has "minimum contacts" with the forum state such that hailing him into court does not violate "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

"In short, the Due Process Clause requires a court to determine whether a defendant 'should reasonably anticipate being hailed into court there.'" LSI Indus. v. Hubbell Lighting, Inc, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting World-Wide Volkswagen Corp, v. Woodson, 444 U.S. 286, 297 (1980). Jurisdiction under International Shoe and its progeny can be either general or

14

specific. Taltwell contends that Zonet is subject to both types of jurisdiction in Virginia.

### 1. General Jurisdiction Over Zonet

When general jurisdiction is established in the forum state, the defendant may be called into that state's courts for matters wholly unrelated to its contacts with the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415 fn.9 (1984). General jurisdiction may be found where the defendant's contacts with the forum state are "continuous and systematic." Id. at 414-16. There is no single test for determining whether a defendant's contacts with the forum state are continuous and systematic. LSI Indus., 232 F.3d at 550. Rather, it is necessary to engage in an individual analysis of the facts of the case.

A number of factors present in this action have been addressed by various courts as bearing on the existence of general jurisdiction. Maintaining a place of business or being licensed to do business in the forum is evidence of continuous and systematic contacts. See Helicopteros, 466 U.S. at 416 (absence of place of business in forum state weighs against general jurisdiction). However, a physical presence in the forum is not dispositive. "[E]ntering into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet" may constitute continuous and systematic contacts with the forum state. Gorman v. Ameritrade Holding Corp.,

293 F.3d 506, 513 (Fed. Cir. 2002) (quoting <u>Zippo Mfg. Co. v. Zippo</u> <u>Dot Com, Inc.</u>, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). Likewise, a broad distributorship network in a forum state that generates a substantial amount of revenue for the defendant may warrant general jurisdiction. <u>LSI Indus.</u>, 232 F.3d at 1375 (finding general jurisdiction where defendant generated millions of dollars in sales through a distribution network in the forum state). <u>But see</u> <u>Reynolds & Reynolds</u>, 301 F.Supp.2d at 552 (declining to exercise general jurisdiction where defendant had two distributors in Virginia which accounted for $7,152 in sales over two years).

In this action, it is uncontroverted that Zonet is a California corporation with its place of business in California. (Compl. ¶ 4.) Taltwell does not allege that Zonet has a place of business in Virginia, or even that Zonet sends representatives to the state to conduct business. Taltwell does allege that Zonet has an interactive website through which users in Virginia may purchase the allegedly infringing products. (Compl. ¶ 9.) However, Taltwell does not make the factual allegation that Zonet has entered into "knowing and repeated" sales contracts with Virginia residents through the use of its website - or that <u>any</u> residents of Virginia have purchased the products. Lastly, Taltwell alleges, and Zonet admits (<u>see</u> Yang aff. ¶¶ 3, 5), that over the past seven years three Virginia retailers or distributors have purchased approximately twenty of the allegedly infringing products

16

representing less than $500 dollars in sales. On this record, it appears that Zonet's sales to Virginia can be characterized as somewhat continuous and systematic, but the record is incomplete on that point. See Reynolds & Reynolds, 301 F.Supp.2d at 552. Taltwell's factual allegations, when viewed in their totality, do not establish a prima facie case of general jurisdiction. However, that issue too can be explored in future discovery and raised again by Taltwell after the close of discovery.[8]

## 2.    Specific Jurisdiction Over Zonet

The court may exercise specific jurisdiction over a defendant whose contacts with the forum state are "isolated and sporadic" so long as the claim in the action "arises out of" or "relates to" a contact with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985). In the patent infringement context, three factors are used to assess specific jurisdiction: "(1) whether the defendant 'purposefully directed' its activities at residents in the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" Silent Drive, 326 F.3d at 1202 (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)); accord New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290,

---

[8]    This course is appropriate given the finding in the following section that there is specific in personam jurisdiction over Zonet.

17

294-95 (4th Cir. 2005) (utilizing similar three-part test for specific jurisdiction analysis). The plaintiff has the burden to prove the first two factors, but the defendant bears the burden of showing that jurisdiction is not reasonable and fair. <u>See</u> <u>Electronics for Imaging, Inc. v. Coyle</u>, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003).

### A. "Purposefully Directed"

The first component of the specific jurisdiction analysis is whether the party challenging jurisdiction has purposefully directed activities at residents in the forum state. The defendant need not actually enter or send an agent to the forum state so long as the defendant purposefully directed activities at the forum state through a communication devise, such as a telephone, letter, or the Internet. <u>See</u> <u>Inamed</u>, 249 F.3d at 1361-62. Creating an ongoing business relationship with a resident of the forum state further indicates that the party has purposefully directed activities at forum. <u>See</u> <u>Burger King</u>, 471 U.S. at 475-76; <u>McGee v.</u> <u>Int'l Life Ins. Co.</u>, 355 U.S. 220, 222-23 (1957). Thus, an out-of-state party has created minimum contacts with the forum state if it enters into a business arrangement with a resident of the forum state whereby the party delivers goods or services to forum state and receives payments therefrom.

There are sufficient facts to conclude that Zonet has purposefully directed activities at Virginia. Zonet acknowledges

that it has three "customers" located in Virginia. (Yang aff. ¶ 3.) Zonet defines its customers as "resellers/distributors/retailers," but does not specify which category its Virginia customers fall into. (Id.) Zonet further states that it has sold roughly twenty of the allegedly infringing products to its Virginia customers over course of seven years. (Id. ¶ 5.) By its own admissions, Zonet has established that it has minimum contacts with Virginia, namely a seven-year business relationship with three resellers, distributors, or retailers in the forum state. Therefore, Zonet has purposefully directed commercial activities at the forum state by maintaining a business relationship with these Virginia entities and selling approximately twenty of the allegedly infringing PCMCIA cards to these customers in the forum state. At oral argument, Zonet admitted that this component of the test was satisfied.

### B. "Arises Out Of Or Relates To"

When a party purposefully directs activities to the forum state, specific personal jurisdiction may be exercised only if the claim in the action arises out of or relates to those activities. Akro, 45 F.3d at 1547. The Supreme Court has not outlined a definitive method for assessing whether the plaintiff's cause of action "arises out of" or "relates to" the defendant's activities. See Inamed, 249 F.3d at 1362. Rather, the analysis appears to involve a commonsense determination that there is a substantial nexus or relationship between the activities and the cause of

19

action. Cf. Id. ("[W]e have stated that it is significant that [arises out of or relates to] is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard."); Electronics for Imaging, 340 F.3d at 1341. Additionally, for the purposes of determining whether the claim arises out of or relates to the defendant's actions in the forum state, it is immaterial that the "bulk of the harm" to the plaintiff may have resulted from the defendant's activities in locations other than the forum state. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780-81 (1984) (noting that libel in a national publication may harm the defendant in many jurisdictions and that plaintiff may bring suit any jurisdiction in which the defendant has the necessary minimum contacts).

Taltwell has set forth a prima facie case that its claim arises out of or relates to Zonet's activities that are purposefully directed at Virginia. Taltwell contends that "Zonet has in the past and continues to infringe . . . one or more claims of the '660 patent by making, using, offering for sale, and/or selling communication devices in the United States that are within the scope of claims of the '660 patent." (Compl. ¶ 12.) From Taltwell's use of "in the United States," it is clear that the plaintiff is complaining of harm on a nationwide scale. To redress this alleged nationwide harm, Taltwell need only establish personal

jurisdiction in this forum by demonstrating that some of Zonet's activities in Virginia gave rise to or relate to the claim. See Keeton, 465 U.S. at 780-81.

Taltwell has met this burden, largely through the admissions of Zonet. Zonet has acknowledged that approximately twenty of the allegedly infringing goods were sold to its resellers, distributors, or retailers in Virginia. (Yang aff. ¶ 5.) Twenty sales of allegedly infringing goods are sufficient to support a finding of personal jurisdiction. See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998) ("'[E]ven a single act can support jurisdiction,' so long as it creates a 'substantial connection' with forum . . . ."). Thus, it is clear that Taltwell's patent infringement claim relates to, if not arises out of, activities that Zonet has purposefully directed at Virginia, to wit: sales of allegedly infringing products directly to Virginia customers with whom Zonet had a longstanding business relationship. At oral argument, counsel for Zonet acknowledged that this component of the analysis has been satisfied by Taltwell.

### C. "Reasonable And Fair"

"Once the plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes the defendant's burden to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"

21

Electronics for Imaging, 340 F.3d at 1351-52 (quoting Burger King, 471 U.S. at 477). A finding that jurisdiction is not reasonable and fair should be "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so clearly attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Akro, 45 F.3d at 1549. Five factors are relevant to the reasonableness and fairness of the court's exercise of personal jurisdiction: "(1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering substantive social policies." Inamed, 249 F.3d at 1363 (citing Asahi Metal Indus. Co. v. Super. Ct. Of Cal., 480 U.S. 102, 113 (1987).

Given that Zonet bears the burden of demonstrating that this Court's exercise of jurisdiction would be unreasonable and unfair, it is significant Zonet did not make such an argument in its briefs. Zonet's arguments attacking jurisdiction have been confined to rebutting the minimum contacts prongs of the personal jurisdiction analysis. (See Def.'s Mem. at 2-6; Zonet USA Corp.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss or in the

Alternative to Transfer Venue  3-5, Docket No. 28.)  Zonet did
press this point at oral argument.

The only contentions by Zonet that are potentially relevant to
a personal jurisdiction reasonableness and fairness analysis have
been presented in the context arguments in support of Zonet's
motion to transfer venue.  These arguments are generally premised
on the assertion that most of Zonet's witnesses are located in the
Central District of California and it would be a hardship for Zonet
to litigate the matter in Virginia.

Given the extraordinarily high burden of demonstrating that
personal jurisdiction is so unreasonable or unfair that it violates
due process, it is more appropriate that Zonet should raise its
arguments in the context of a motion to transfer venue.  On this
matter, the Federal Circuit has stated:

> Where a defendant who purposefully has
> directed his activities at the forum residents
> seeks to defeat jurisdiction, he must present
> a compelling case that the presence of some
> other considerations would render jurisdiction
> unreasonable.  Most such considerations may be
> accommodated through means short of finding
> jurisdiction unconstitutional. For example . .
> .  a defendant claiming substantial
> inconvenience may seek a change of venue.

Inamed, 249 F.3d at 1363 (quoting Akro, 45 F.3d at 1546).  On this
record, the Court can find nothing unreasonable or unfair about
requiring Zonet to defend this action here.

Accordingly, Zonet's motion to dismiss the action for lack of
personal jurisdiction will be denied.  Zonet's arguments to the

23

effect that exercising jurisdiction would burdensome will be addressed where they were raised: in the context of Zonet's motion to transfer venue.

## II.   Zonet's Motion To Transfer Venue

Zonet requests that the action be transferred to the United States District Court for the Central District of California if the Court rejects the motion to dismiss for lack of personal jurisdiction. (Mot. to Dismiss, Docket No. 13.) Zonet's primary argument is that venue is inappropriate under 28 U.S.C. § 1400(b). In the alternative, Zonet contends that venue should be transferred under 28 U.S.C. § 1404(a).

### 1.   § 1400(b)

Section 1404(b) states: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1404(b). Section 1391(c) further clarifies the meaning of "resides": "[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

The Federal Circuit's view of motions alleging improper venue in the patent infringement context is distinguishable from similar

24

motions in other contexts.  In a situation very similar to the one
here presented, the Federal Circuit explained:

> [A]lthough [Plaintiff] moved to dismiss for
> lack of personal jurisdiction and improper
> venue, the venue point is a non-issue. Venue
> in a patent action against a corporate
> defendant exists wherever there is personal
> jurisdiction.    Therefore, no separate venue
> inquiry is necessary.

Trinitec Indus. v. Pedre Promotional Products, Inc., 395 F.3d 1275,
(Fed. Cir. 2005) (citations omitted).

Taltwell has adequately set forth a prima facie case that this
Court has personal jurisdiction over Zonet.    Accordingly, the
motion to transfer venue, to the extent venue is alleged to be
improper under 28 U.S.C. § 1400(b), will be denied.

   2.   § 1404(a)

In the alternative, Zonet asks the Court to exercise the
discretionary authority conferred by 28 U.S.C. § 1404(a) to
transfer the action to the Central District of California.  Section
1404(a) provides: "For the convenience of the parties and
witnesses, in the interests of justice, a district court may
transfer any civil action to any other district or division where
it might have been brought." 28 U.S.C. § 1404(a). Unlike matters of
personal jurisdiction and venue under § 1400(b), the law of the
Fourth Circuit governs this Court's venue analysis under § 1404(a).
See Storage Tech. Corp. v. Cisco Sys., 329 F.3d 823, 836 (Fed. Cir.
2003) ("In reviewing a district court's decision regarding a motion

25

to transfer venue under 28 U.S.C. § 1404(a), this court applies the law of the appropriate regional circuit.").

Assessing a motion under § 1404(a) requires the court to make two inquiries: "(1) whether the claims might have been brought in the transferee forum; and (2) whether the interests of justice and convenience of the parties and witnesses justify transfer to that forum." E. Coast Res., LLC v. Hempstead, 2007 U.S. Dist. LEXIS 51825, at *8 (E.D. Va. 2007) (quoting Koh v. Microtek Int'l, Inc., 250 F.Supp.2d 627, 630 (E.D. Va. 2003)).

### 3.  Whether The Claims Have Been Brought In The Central District Of California

The court may only transfer venue if the plaintiff could have maintained the action in the target forum. See One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F.Supp.2d 824, 829 (E.D. Va. 2004).  For a corporate defendant in a patent infringement action, venue would be proper in any forum where personal jurisdiction could be exercised. See 28 U.S.C. §§ 1404(b), 1391(c). Thus, the action could have been brought in the Central District of California if that forum could properly exercise personal jurisdiction over Zonet.  It is undisputed that the action could have been brought in the Central District of California.

### 4.  Whether Other Factors Warrant The Transfer of Venue

For the second aspect of the analysis under § 1404(a) - whether transferring venue is in the interests of justice and convenient to the parties and witness - the Court should consider

26

a number of factors: "(1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and [(7)] the interest of justice." BHP Int'l Inv., Inc. v. Online Exch., Inc., 105 F.Supp.2d 493, 498 (E.D. Va. 2000).

The weight given to each of these factors and the ultimate decision to transfer "is committed to the sound discretion of the court." Verosol B.V. v. Hunter Douglas, Inc., 806 F.Supp. 582, 591 (E.D. Va. 1992). However, the plaintiff's choice of forum is entitled to "substantial weigh" and "due deference" unless these other factors "clearly outweigh" the plaintiff's choice. Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc., 702 F.Supp. 1253, 1256 (E.D. Va. 1988).

In support of its motion to transfer venue, Zonet advances several arguments as to why the Central District of California is a more convenient forum: (1) "there is little or no nexus between this District [Eastern District of Virginia] and underlying cause of action"; (2) the transferee district "is a more convenient forum for Zonet"; (3) Zonet's preferred sources of proof, including members of the PCMCIA trade association, are primarily located in California; and (4) the availability of compulsory process of

27

California-based witnesses weighs in favor of venue in California.
(Def.'s Mem. at 10.) Zonet concedes that "the convenience of
witnesses does not point strongly in favor of either party at this
time other than for the potential witnesses drawn from the PCMCIA"
and that the "interest of justice factor does not strongly point in
favor of or against transfer." (Id. at 11.)

Zonet's first argument, that there is an insufficient nexus
between this forum and the cause of action, misses the mark because
that is Taltwell's home forum and that alone establishes a
significant nexus in this forum. Thus, the contention does not
auger in favor of transfer.

Zonet's second argument, that a transfer of venue is more
convenient for Zonet, is likewise unavailing. A party challenging
venue does not prevail if "transfer does [nothing] more than merely
'shift the inconvenience' to the other party." E. Coast Res., 2007
U.S. Dist. LEXIS 51825, at *8 (citing JTH Tax, Inc. v. Lee, 482
F.Supp.2d 731, 736 (E.D. Va. 2007)); see also Bd. of Tr. v.
Sullivan Ave. Prop., LLC, 508 F.Supp.2d 473, 478 (E.D. Va. 2007)
(noting that "when Plaintiff files suit in its home forum,
'convenience to parties rarely, if ever, operates to justify
transfer.'").

Zonet's third and forth arguments, pertaining to the
availability of witnesses and compulsory process, can be considered
together. Zonet states that members of the PCMCIA trade

28

association are primarily located in California and that "it is reasonable to expect the parties and the Court might seek" witness therefrom. (Def.'s Mem. at 10.) Zonet does not assert that there are other factual or expert witnesses located in California.

Zonet's third and fourth arguments can be dismissed for several reasons. First, Zonet has not asserted that Califorina-based PCMICA witnesses are necessary to either party's case or, correspondingly, that other appropriate expert witnesses could not be drawn from within the Eastern District of Virginia. Second, because Zonet's arguments mention only expert, rather than factual, witnesses located in the transferee forum, there is no reason to believe that compulsory process will be necessary. Indeed, experts can, and usually do, travel to the forum where the litigation is being conducted to give their testimony. Lastly, assuming that Zonet will rely primarily on expert testimony from California-based PCMCIA witnesses, this factor only slightly weighs in favor of venue transfer; "[I]t is less inconvenient for an expert witness to travel in order to testify, because an expert can be well-compensated for his or her time." One Beacon Ins., 312 F.Supp.2d at 831.

Considering the seven factors outlined in BHP, Zonet has not met its burden to show that transfer to the Central District of California outweighs Taltwell's choice of forum. The majority of factors are essentially neutral or not addressed by Zonet, and only

29

one factor weighs slightly in favor of transfer. Accordingly, Zonet's motion to transfer venue under § 1404(a) will be denied.

## III. Taltwell's Motion For Expedited Jurisdictional Discovery

Taltwell filed a motion to expedite jurisdictional discovery, consisting of limited requests for document production, interrogatories, admissions, depositions, and third-party discovery. (Taltwell's Mot. for Expedited Jurisdictional Discovery, Docket No. 17.) The stated purpose of the expedited discovery is uncover evidence to rebut Zonet's arguments against this Court's jurisdiction and venue. However, Taltwell has prevailed on the jurisdictional issue except as to one of three possible statutory grounds under the Virginia long-arm statute. Expedited discovery is not necessary for the court to dispose of Zonet's jurisdictional motion. However, as explained previously, Taltwell may conduct discovery respecting personal jurisdiction under the long-arm statute and on the topic of general jurisdiction. Thus, the defendant's Motion To Dismiss For Lack Of Personal Jurisdiction, Motion To Dismiss for Failure To State A Claim Upon Which Relief Can Be Granted, Or In The Alternative To Transfer Venue (Docket Nos. 7, 12 and 13) will be denied on the merits and Taltwell's Motion For Expedited Jurisdictional Discovery (Docket No. 16) will be denied as moot.

30

one factor weighs slightly in favor of transfer. Accordingly, Zonet's motion to transfer venue under § 1404(a) will be denied.

## III. Taltwell's Motion For Expedited Jurisdictional Discovery

Taltwell filed a motion to expedite jurisdictional discovery, consisting of limited requests for document production, interrogatories, admissions, depositions, and third-party discovery. (Taltwell's Mot. for Expedited Jurisdictional Discovery, Docket No. 17.) The stated purpose of the expedited discovery is uncover evidence to rebut Zonet's arguments against this Court's jurisdiction and venue. However, Taltwell has prevailed on the jurisdictional issue except as to one of three possible statutory grounds under the Virginia long-arm statute. Expedited discovery is not necessary for the court to dispose of Zonet's jurisdictional motion. However, as explained previously, Taltwell may conduct discovery respecting personal jurisdiction under the long-arm statute and on the topic of general jurisdiction. Thus, the defendant's Motion To Dismiss For Lack Of Personal Jurisdiction, Motion To Dismiss for Failure To State A Claim Upon Which Relief Can Be Granted, Or In The Alternative To Transfer Venue (Docket Nos. 7, 12 and 13) will be denied on the merits and Taltwell's Motion For Expedited Jurisdictional Discovery (Docket No. 17) will be denied as moot.

## IV. Zonet's Motion To Dismiss For Failure To State A Claim

In order to survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must aver "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). In evaluating plausibility, the Court may not rely on mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 1965. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. at 1965, and critical elements of a claim must be, at a minimum, "suggested by the facts," id. at 1973. The Court should also "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable inferences from those facts in the plaintiff's favor." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005); see also Structural Concrete Products, LLC v. Clarendon American Insurance Co., 2007 U.S. Dist. LEXIS 61714, *7 (E.D. Va. Aug. 22, 2007) (maintaining inference standard in light of Twombly).

A motion to dismiss for failure to state a claim upon which relief can be granted is not a procedural matter implicating unique issues of patent law, and thus the law of the Federal Circuit is not controlling. See McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1355-56 (Fed. Cir. 2007). The Fourth Circuit has not, however, had the occasion to discuss a motion to dismiss a patent infringement

31

action in light of the <u>Twombly</u> decision.  The sole Federal Circuit decision to do so thus far, <u>McZeal</u>, draws on Fifth Circuit precedent but provides appropriate guidance on the present issue nonetheless.  <u>See</u> <u>McZeal</u>, 501 F.3d at 1355-60.

In <u>McZeal</u>, the Federal Circuit concluded that a Complaint stating patent infringement cause of action is sufficiently pled under the <u>Twomly</u> standard if it: (1) asserts that the plaintiff owns the patent at issue; (2) names the defendants; (3) states that the defendant infringed the patent; (4) describes, in general terms, the means by which the patent was infringed; (5) and identifies the specific parts of patent law that are implicated. <u>Id.</u> at 1357.  Fulfilling each of these elements is sufficient to put the defendant on notice and permit the action to survive a Rule 12(b)(6) motion.  <u>Id.</u>

Assuming Taltwell's allegations are true, as the Court must, Taltwell has set forth sufficient allegations in its Complaint to state a claim upon which relief may be granted.  Each of the <u>McZeal</u> factors can be identified in the Complaint.  The Complaint alleges that Taltwell owns the '660 patent and that Zonet allegedly infringed said patent (Compl. ¶¶ 7, 9), fulfilling the first three factors.  Respecting the fourth factor, the Complaint alleges that Zonet infringed "directly or under the doctrine of equivalents, one or more claims of the '660 patent by making, using, offering for sale, and/or selling the communication devices in the United States that are within the scope of the claims of the '660 patent." (<u>Id.</u>

¶ 12.)   Lastly, the fifth factor is satisfied because Taltwell invokes 35 U.S.C. § 271 (Id. ¶ 2), thus putting Zonet on notice as to which patent law is implicated.   Taltwell need not specify which claims of the '660 patent have been performed by the allegedly infringing products. McZeal, 501 F.3d at 1357 ("[A] plaintiff in a patent infringement suit is not required to specifically include each element of claims asserted in the patent.").

Taltwell has averred enough facts to state a claim that is plausible on its face.   Therefore, Zonet's motion to dismiss for failure to state a claim be denied.

### CONCLUSION

For the reasons stated above, the defendant's Motion To Dismiss For Lack Of Personal Jurisdiction, Motion To Dismiss for Failure To State A Claim Upon Which Relief Can Be Granted, Or In The Alternative To Transfer Venue (Docket Nos. 7, 12 and 13) are denied and Taltwell's Motion For Expedited Jurisdictional Discovery (Docket No. 17) is denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel by facsimile and regular mail.

It is so ORDERED.

_____/s/_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 19, 2007

33